ASHURST PERKINS COIE

Ashurst Perkins Coie US LLP
1155 Avenue of the Americas
22nd Floor
New York, NY 10036-2711

T. +1.212.262.6900
F. +1.212.977.1649
ashurstperkinscoie.com

October 5, 2026

Rachel S. Mechanic
rachel.mechanic@ashurstperkins.com
D. +1.212.261.6811
F. +1.212.399.8081

Honorable Joan M. Azrack
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

**Re: *Jane Doe, et al. v. Uber Technologies, Inc., et al.*, Case No. 2:26-cv-02619-JMA-SIL**

Dear Judge Azrack:

We represent Defendant Uber Technologies, Inc. ("Uber") in the above-referenced matter. Pursuant to Your Honor's Individual Rule IV.B, we submit this letter to respectfully request leave to file a motion to dismiss the Amended Complaint (ECF No. 27).

This case arises from an alleged sexual assault committed by a third party who allegedly used the Uber App to request a ride for a 16-year-old minor, Jane Doe, in violation of Uber's Community Guidelines. The alleged assault occurred *after* the ride was safely completed and Jane Doe had exited the vehicle. The Amended Complaint does not allege that the independent driver, Defendant Gobashy—much less Uber—knew Jane Doe was a minor or the alleged purpose of the trip.

On June 5, 2026, Uber filed a letter seeking leave to dismiss the initial Complaint (ECF No. 12), which remained pending. On September 14, 2026, Plaintiffs sought leave to file an amended complaint (ECF No. 26), which the Court granted on September 21, 2026. The Amended Complaint, filed September 22, 2026, asserts the same five causes of action and adds several new allegations. But these allegations fail to cure the deficiencies in the initial Complaint, as New York law is clear that a defendant generally has no duty to protect a plaintiff against third-party conduct. Jane Doe was the victim of an awful crime, but responsibility rests solely with the third-party assailant.

## I. Counts I and III Fail Because Plaintiffs Have Not Established a Special Relationship

Plaintiffs' common law negligence claim (Count I) fails because Plaintiffs have not identified any duty Uber allegedly breached. Absent a "special relationship," a defendant "generally has no duty to control the conduct of third persons so as to prevent them from harming others." *David v. Weinstein Co. LLC*, No. 18-cv-5414, 2019 WL 1864073, at *6 (S.D.N.Y. Apr. 24, 2019). Examples of such relationships include "master and servant . . . and common carriers and their passengers." *Hamilton v. Beretta U.S.A. Corp.*, 96 N.Y.2d 222, 233 (2001). Even assuming the truth of Plaintiffs' new allegations, the Amended Complaint fails to demonstrate any such relationship here.

<u>*First*</u>, although Plaintiffs try to bolster their allegation that Uber is a common carrier by adding market-share data and comparisons between Uber and "Yellow NYC Taxis," Am. Compl. ("AC")

Ashurst Perkins Coie US LLP is a limited liability partnership established under the laws of Washington State and is part of the Ashurst Perkins Coie Group. Ashurst Perkins Coie is a global group of separate legal entities, some providing legal services and some non-legal services. Different legal entities in the group may operate in the same jurisdictions.

¶¶ 7–14, these new allegations do not change the legal analysis. New York law defines a "[c]ommon carrier of passengers by motor vehicle" as any person that "provid[es] service for the general public." *See* N.Y. Trans. § 2(7); *see also* AC ¶ 14. As in *Doe v. Uber Technologies, Inc.*, 551 F. Supp. 3d 341 (S.D.N.Y. 2021)—the one case on which Plaintiffs rely—the Amended Complaint "is devoid of any non-conclusory or factual allegations describing how Uber provides services for the general public" or "how Uber is sufficiently similar to taxi companies under New York common law." *Id.* at 360 (cleaned up). Plaintiffs' allegation about Uber's purported market share (AC ¶ 8) does not speak to how Uber "provides services for the general public." Nor do the alleged similarities between Uber and taxis (*id.* ¶ 13) suggest that Uber is a common carrier. Even assuming Plaintiffs' allegations as to how riders request rides through the Uber App were true (they are not), that would not make a difference: the relevant question is not whether the *mode* of requesting a ride is similar to how riders call taxis; rather, the relevant question is whether Uber provide[s] services "for the general public." As Plaintiffs' own allegations demonstrate, unlike taxis—which riders "can hail . . . on any street corner" (*id.*)—a person requesting a ride through the Uber platform can only do so "through the Uber App," (*id.*), to which users' access is controlled. *See* Uber's Community Guidelines, available at https://www.uber.com/us/en/legal/general-community-guidelines/?uclick_id=85c80d46-9061-48e7-b1f0-248f874c9135 (explaining how accounts can be deactivated).[1]

Moreover, even assuming that Uber is a common carrier, it had no duty to protect Jane Doe from an assault that occurred *after* the trip was completed, *after* she had exited the independent driver's vehicle, and *after* she had entered the assailant's vehicle. *See Hayes v. City of New York*, 34 A.D.3d 208, 209–10 (1st Dep't 2006) (cruise ship not liable for assault on plaintiff by a fellow passenger that occurred after disembarkation from the ship).

*Second*, no employment relationship existed between Uber and Gobashy. While the Amended Complaint attempts to bolster Plaintiffs' conclusory allegation that Gobashy "was an employee acting on behalf of [Uber]" (AC ¶ 92) by adding allegations about the alleged "control" that Uber purportedly exerts over Gobashy, those allegations do not cure the deficiency in Plaintiffs' initial Complaint. Mere "control" is not sufficient; rather, courts look to "the degree of control exercised by the purported employer over the results produced or the means used to achieve the results." *Bynog v. Cipriani Grp., Inc.*, 1 N.Y.3d 193, 198 (2003). The factors Plaintiffs cite—fare structures, rating systems, and navigation tools—are hallmarks of a technology platform's marketplace architecture, not indicia of an employment relationship. New York courts addressing this issue have consistently held as a matter of law that drivers who provide transportation to riders through the Uber App are independent contractors, not employees. *See, e.g.*, *Kamal v. Singh*, No. 23-cv-05498, 2025 WL 3012790, at *3–4 (S.D.N.Y. Oct. 28, 2025); *Masi v. Khatiwada*, No. 716403/2019, 2025 WL 2945239, at *1–2 (N.Y. Sup. Ct. Queens Cty. Jan. 21, 2025). Plaintiffs' citation (AC ¶ 26) to *Matter of Lowry*, 189 A.D.3d 1863 (3d Dep't 2020), does not change the analysis because *Lowry* is neither binding on this Court nor relevant to tort liability. *See Abouzeid v. Grgas*, 295 A.D.2d 376, 378 (2d Dep't 2002); *see also* N.Y. Labor Law § 623(2).

[1] The Amended Complaint relies on the Community Guidelines, and therefore they may be considered on a motion to dismiss. *See Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005).

The absence of an employment relationship is also fatal to Plaintiffs' vicarious liability claim (Count III). *See Kleeman v. Rheingold*, 81 N.Y.2d 270, 273 (1993) (one who hires an independent contractor is generally "not liable for the independent contractor's negligent acts").

**II. Plaintiffs Fail to State a Voluntary Undertaking Claim (Count II)**

To state a voluntary undertaking claim, Plaintiffs must demonstrate "(1) that the plaintiff reasonably relied on the defendant's assumption of a duty and (2) that the defendant's conduct placed the plaintiff in a more vulnerable position than the plaintiff would have been in had the defendant done nothing." *Wendy Hong Wu v. Dunkin' Donuts, Inc.*, 105 F. Supp. 2d 83, 94 (E.D.N.Y. 2000) (cleaned up). Plaintiffs fail both elements.

*First*, the Complaint does not sufficiently allege detrimental reliance. Plaintiffs attempt to satisfy this element by baldly alleging that Mary Doe relied on Uber's prohibition on the transportation of unaccompanied minors (AC ¶¶ 51–53), but that is directly contradicted by the allegation that Mary "did not receive a notification that her daughter had entered an Uber vehicle because the order for an Uber vehicle had not been placed through an Uber Teen account" (*id.* ¶ 63).

*Second*, Plaintiffs do not (and cannot) allege that Uber's purported undertaking to protect Jane Doe through its policy prohibiting unaccompanied minors on the platform *increased* the risk of harm to Jane Doe "over what it would have been" had Uber not had any protections in place at all. *Matthews v. United States*, 150 F. Supp. 2d 406, 414 (E.D.N.Y. 2001).

**III. Count IV Fails to State a Negligent Training and Supervision Claim**

Count IV fails for two independent reasons. *First*, a claim for negligent training and supervision requires the existence of an employer-employee relationship. *See Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004). As explained above, Plaintiffs have alleged no such relationship here. *Second*, even if an employment relationship existed, the claim still fails because Plaintiffs do not allege that Gobashy had a propensity to commit the alleged tortious conduct—let alone that Uber *knew or should have known* of that propensity. *See Doe*, 551 F. Supp. 3d at 361–63. Plaintiffs' new allegation that Uber "willfully and intentionally chose to take no steps to verify that Gobashy had complied with its Community Guidelines" (AC ¶ 105) does not cure the deficiency, as they still fail to allege "specific prior acts or allegations against *[Gobashy]*" sufficient to demonstrate that Uber's conduct was the cause of Plaintiffs' injury. *Doe*, 551 F. Supp. 3d at 361–62. Put another way, Plaintiffs do not—and cannot—allege that had Uber "verif[ied] that Gobashy had complied with the Community Guidelines," it would have revealed a "propensity to commit the alleged acts" by Gobashy. *Id.*[2]

For the foregoing reasons, Uber respectfully requests that the Court schedule a pre-motion conference or set a briefing schedule for Uber's motion to dismiss the Amended Complaint.

---

[2] Mary Doe's claim for loss of services (Count V) fails because it is derivative of Jane Doe's claims, all of which fail as a matter of law. *See Silverstein v. Bronxville Obstetrical & Gynecological Grp., P.C.*, 162 A.D.2d 676, 676–77 (2d Dep't 1990).

Respectfully Submitted,

*s/Rachel S. Mechanic*
Rachel S. Mechanic

cc: All counsel of record (via ECF)